1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

9
10

TRI-CITY RADIOLOGY, INC., P.S.,
a Washington corporation,

NO:  CV-10-5067-RMP

11
12
13

Plaintiff,

v.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR
IMPROPER VENUE

14
15
16
17

FUJIFILM MEDICAL SYSTEMS
USA, INC., a New York corporation,

Defendant.

18
19
20
21
22
23
24
25
26
27
28

Defendant FUJIFILM Medical Systems USA, Inc. ("FMSU") moves to

dismiss the suit by Plaintiff Tri-City Radiology, Inc., P.S. ("Tri-City") for

improper venue under Fed. R. Civ. P. 12(b)(3).  Defendant contends that the

dispute arises out of the End User Purchase, License and Services Agreement

between the parties, which contain a forum selection clause identifying New York

state court as the proper venue for any such dispute.  Plaintiff responds that the

dispute arises out of a separate agreement, a promissory note that did not contain a

forum selection clause, so dismissal for improper venue is not warranted.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR
IMPROPER VENUE ~ 1

1    The Court has reviewed the Defendant's motion to dismiss (Ct. Rec. 6),

2  supporting memorandum (Ct. Rec. 7), declaration and exhibits (Ct. Rec. 8),

3  Plaintiff's response (Ct. Rec. 10), declaration and exhibits (Ct. Rec. 13), and

4  Defendant's reply (Ct. Rec. 14) and declaration (Ct. Rec. 15).  The Court also

5  heard oral argument on August 26, 2010, and is fully informed.

6
7                              **Background**

8    On March 17, 2009, FMSU and Tri-City executed a Configuration Quote

9  and End User Purchase, License and Services Agreement ("Agreement") pursuant

10  to which Tri-City purchased and FMSU sold certain medical imaging equipment

11  and software comprising systems for computed radiography (CR) and digital

12  mammography as well as a Radiological Information System (RIS) and Picture

13  Archiving and Communication System (PACS) (together "RIS/PACS").  The

14  Agreement contained a forum selection clause in section 21(b), "Interpretation,"

15  which provided in relevant part:

16
17            This Agreement shall be governed in all respects, including without
18         limitation as to validity, interpretation and effect, by the laws of the
19         state of New York, without regard to its conflict of laws principles.
20         Any legal action relating to this Agreement shall be commenced and
21         maintained exclusively before any appropriate state court of record in
22         New York or, if a federal question is involved, in the United States
23         District Court for the Southern District of New York, and the parties
24         agree to submit to the jurisdiction and venue of such courts.

25  (Ct. Rec. 8 at 13).

26
27
28

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR
IMPROPER VENUE ~ 2

The Agreement also provides: "This Agreement shall include all schedules and other attachments hereto, which are hereby incorporated herein and made a part hereof" (Ct. Rec. 8 at 6).

At some point between execution of the Agreement and January 2010, Tri-City began to inform FMSU that certain equipment purchased through the Agreement, namely the RIS/PACS, did not work. Tri-City sent a letter dated January 6, 2010, requesting that FMSU accept return of the RIS/PACS system and refund the quoted price for that system minus $45,870.11, which Tri-City appears to acknowledge that it still owed (Ct. Rec. 13-1, Exh. A at 6-7).

According to the appendices to Tri-City's letter, the original quoted price of the RIS/PACS, less the amount owed by Tri-City, equaled $204,356.14. In the January 2010 letter, Tri-City also flagged potential points of negotiation to resolve the dispute between Tri-City and FMSU. Namely, Tri-City expressed a willingness to "negotiate a price" for a "video image grabber" that FMSU had provided "at no additional expense" and for hardware in a computer closet at Tri-City's imaging center, "particularly the large cabinet and perhaps a server or two" (Ct. Rec. 13-1, Exh. A at 7).

A series of emails between Lynn Bresnahan, an administrator at Tri-City, and Steve Haberlein, a vice president of sales at Fuji-Film at FMSU, in

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE ~ 3

February 2010 concern the amount that FMSU was willing to credit Tri-City's account for the return of the RIS/PACS and the timing of the de-installation of the returned equipment (Ct. Rec. 13-2).  By February 23, 2010, the emails indicate that Tri-City and FMSU had settled on a refund amount of $123,950 (Ct. Rec. 13-3 at 4).  On February 24, 2010, Mr. Haberlein of FMSU agreed to prepare a promissory note memorializing the amount that FMSU would return (Ct. Rec. 13-3 at 2-3).  FMSU delivered a promissory note to Tri-City, signed by FMSU's president and CEO and dated March 1, 2010 (Ct. Rec. 13-3).  The body of the note stated in full:

> I am writing to confirm that upon the deinstallation and return to FMSU's office in Stamford of Tri-City's RIS/PACS system and equipment, FMSU shall immediately issue a refund check to Tri-City Radiology in the amount of $123,950.

(Ct. Rec. 13-3).

Upon deinstallation of the equipment, FMSU did not pay Tri-City $123,950 (Ct. Rec. 13 at 2).  Rather, FMSU issued a check in May 2010 in the amount of $77,985.39, which FMSU characterizes as the agreed-upon refund amount of $123,950.00 less the $45,964.6 balance that FMSU alleges that Tri-City still owed on the original Agreement 1 (Ct. Rec. 8 at 3).  Tri-City did not deposit FMSU's check (Ct. Rec. 8 at 3).  Rather, Tri-City filed a complaint for damages in Benton County Superior Court for breach of

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE ~ 4

contract for FMSU's failure to pay in accord with the March 1, 2010

Promissory Note (Ct. Rec. 1, Exh. A, at 10).

### Analysis

FMSU seeks to invoke the forum selection clause in the Agreement to

dismiss Tri-City's suit under Fed. R. Civ. P. 12(b)(3), which provides for

dismissal for improper venue.  *See Argueta v. Banco Mexicano, S.A.*, 87

F.3d 320, 324 (9th Cir.1996) (courts treat a motion to dismiss based on

forum selection clause as a motion to dismiss for improper venue).  FMSU

contends that Tri-City should have filed this suit in New York, rather than

the Eastern District of Washington, because the forum selection clause

requires Tri-City to sue, if at all, "in any appropriate state court of record in

New York" (Ct. Rec. 8 at 13).

Tri-City argues that the present lawsuit does not fall within the scope

of the forum selection clause in the Agreement, because Tri-City is

attempting to recover money for a breach of contract related to the return of

the RIS/PACS, which  Tri-City characterizes as a breach of the promissory

note that was executed March 1, 2010.  Alternatively, Tri-City argues that if

this Court finds that the forum selection clause applies to Tri-City's breach

of contract claim related to the promissory note, that the forum selection

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR
IMPROPER VENUE ~ 5

clause is unenforceable because it violates Washington's public policy by designating a forum that is alien to all parties.

In considering a motion under Fed. R. Civ. P. 12(b)(3), the Court need not accept the pleadings as true and may consider facts outside the pleadings. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2003). However, "the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Id.* at 1138-40. In diversity cases, federal law governs the analysis of the validity and scope of a forum selection clause. *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988); *see also Argueta*, 87 F.3d at 324.

"A forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which we will conclude the clause is unenforceable." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir.2009) (citing and quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17, 92 S.Ct. 1907 (1972)). If a claim falls within the scope of a forum selection clause, enforcement of the clause is proper unless the clause (1) "'clearly show[s] that enforcement would be unreasonable and unjust,'" (2) "'that the clause was invalid for such reasons as fraud or overreaching,'" or (3) it "'would contravene a strong public policy of the forum in which suit is brought, whether

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE ~ 6

declared by statute or by judicial decision.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) (quoting *Bremen*, 407 U.S. at 15).

A. **Scope**

For purposes of this analysis and to draw all reasonable inferences in favor of the nonmoving party, the Court assumes that the letter from March 2010 is a promissory note that constitutes an additional and separate contract between the parties, as Plaintiff alleges.

The parties do not cite to any binding precedent directly on point as to the question of whether a forum selection clause applies to a claim arising out of a separate contract. The Ninth Circuit has adopted the approach of applying a forum selection clause to non-contract claims such as tort claims "where the claims alleged in the complaint *relate to* the interpretation of the contract." *Graham Tech. Solutions*, 949 F.Supp. at 1433 (citing *Manetti-Farrow, Inc.*, 858 F.2d at 514). In *Manetti-Farrow*, the Ninth Circuit determined that plaintiff's tort claims, based on factual allegations that occurred subsequent to the execution of the contract containing the forum selection clause, were nevertheless within the scope of the clause because they related to interpretation of the contract and could not be "adjudicated without analyzing whether the parties were in compliance with the contract." 858 F.2d at 514.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE ~ 7

The forum selection clause in the Agreement in this case broadly applies to "[a]ny legal action relating to this Agreement" (Ct. Rec. 8 at 13). Tri-City claims damages for breach of contract of the March 1, 2010, promissory note, but the facts alleged in the breach of contract claim and the creation of the promissory note both relate to the underlying Agreement through which the equipment and software being returned in the promissory note was purchased and sold.  For example, the parties relied at least in part on the quoted purchase price of the RIS/PACS in the Agreement and the balance allegedly still owing on that equipment as a basis for determining the appropriate amount of money to be credited to Tri-City for the return of the equipment.  As in *Manetti-Farrow* and *Nextrade* Tri-City's breach of contract claim "cannot be adjudicated without analyzing whether the parties were in compliance with" the purchase and sale Agreement.  *See Manetti-Farrow*, 858 F.2d at 514 (for quoted language).

The Court finds that Tri-City's breach of contract action is "related to" the Agreement and therefore, Tri-City's claim falls within the scope of the forum selection clause in the Agreement.

**B. Washington's Public Policy**

Having determined that Tri-City's claim falls within the scope of the forum selection clause, the Court now turns to the question of whether the clause is

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE ~ 8

unenforceable here on the basis that it "would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Bremen*, 407 U.S. at 15.  Tri-City does not meet its heavy burden of showing that a strong public policy exists against requiring Tri-City, a Washington corporation, and FMSU, a New York corporation, to litigate in New York.  To support their public policy argument, Tri-City primarily relies on two Washington cases: *Lambert v. Kysar*, 983 F.2d 1110, 1120-21 (1st Cir. 1993) (citing *Mangham v. Gold Seal Chinchillas, Inc.*, 69 Wn.2d 37, 46-47 (1966), and *Exum v. Vantage Press, Inc.*, 17 Wn. App. 447, 449 (1997)).  However, the Washington courts relied on factual evidence in the records to determine that enforcement of forum selection clauses in those cases would be unreasonable and unjust.  The cases did not render their decisions on public policy grounds.  *Mangham*, 69 Wn.2d at 46-47; *Exum*, 17 Wn. App. at 449.

Tri-City also cites Washington case law for its argument that forum selection clauses are unconscionable if they deny relief by selecting a forum in which class actions are not available.  Plaintiff's Reply (Ct. Rec. 10 at 12) (citing *McKee v. AT&T Corp.*, 164 Wn.2d 372, 286 (2008).  However, there is nothing in Tri-City's complaint or elsewhere to indicate that this is, or likely could become, a class action.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE ~ 9

Therefore, the Court finds that even in viewing the facts in the light most favorable to the Plaintiff, the promissory note is bound by the forum selection clause in the Agreement and that there is no basis to avoid enforcement. Accordingly, Plaintiff should initiate this lawsuit in New York.  The Court dismisses Plaintiff's claim in this Court pursuant to Fed. R. Civ. P. 12(b)(3).

**IT IS SO ORDERED**:

1.  The Defendant's Motion to Dismiss for Improper Venue (**Ct. Rec. 6**) is **GRANTED**.

2.   Plaintiff's Complaint and any and all counterclaims and/or cross-claims are dismissed without prejudice and without costs to any party.

3.  All pending motions, if any, are **DENIED AS MOOT**.

The District Court Executive is directed to enter this Order, provide copies to counsel, and **CLOSE** this case.

**DATED** this 21st of September, 2010.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Court Judge

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR
IMPROPER VENUE ~ 10